UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-19-GWU

DIANE NESBITT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity?
   If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

>   3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
>   4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
>   5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Diane Nesbitt, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia, low back pain secondary to mild degenerative disc disease of the lumbosacral spine, restless leg syndrome, chronic fatigue syndrome, and obesity. (Tr. 21). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that Mrs. Nesbitt retained the residual functional capacity to perform a significant numbers of jobs existing in the

5

economy, and therefore was not entitled to benefits. (Tr. 25-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 44, eleventh grade education, and lack of relevant work experience could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, with up to six hours of sitting, standing, or walking in an eight-hour day, and also had the following non-exertional restrictions. (Tr. 59). She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally bend, stoop, kneel, crawl, and climb ramps and stairs; and (3) could have no exposure to concentrated vibration, temperature extremes, or industrial hazards. (Id). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 60).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence. There is an additional issue in that it appears that the plaintiff's Date Last Insured (DLI) for purposes of her DIB application was December 1, 2002 (Tr. 125) and that she had been denied in a previous, unavailable ALJ decision issued March 23, 2005 (Tr. 19). The ALJ found that <u>res judicata</u> applied and that only her SSI application would be considered. (Id.). The plaintiff has not contested this finding. Accordingly, that portion of the administrative

decision denying the DIB application will be affirmed.  The remainder of this opinion concerns the SSI application.

Mrs. Nesbitt alleged disability due to "muscle disease," fibromyalgia, depression, chronic fatigue syndrome, restless leg syndrome, and rheumatoid arthritis.  (Tr. 139).  She testified that she had been diagnosed with fibromyalgia by her treating family physician, Dr. Slattery, who had prescribed the medication Lyrica, which helped "some." (Tr. 39-40).  Dr. Slattery had also diagnosed chronic fatigue syndrome and restless leg syndrome; she took Valium for the restless leg syndrome as well as for anxiety.  (Tr. 40, 42).  She felt exhausted no matter how much she slept.  (Tr. 42).  In addition to Lyrica, she also took Percocet for pain and an unknown medication for osteoarthritis.  (Tr. 47).  In terms of daily activities, she was able to take care of her personal needs and wake her two children up for school but when they left she would go back to bed and sleep for two or three hours before doing 30 to 60 minutes of housework.  (Tr. 48-9).  She would take a hot bath to reduce her stiffness, sometimes twice a day, and would watch TV, sometimes lying down, but usually getting up and down.  (Tr. 49-50).  It would take her an hour to prepare dinner, and her daughter would wash the dishes while she dried.  (Tr. 50-1). She would then take a nap after dinner.  (Tr. 53).  Mrs. Nesbitt testified that she had few social activities, would only go to the movies once every three or four months, and was exhausted after going shopping.  (Tr. 54-5).

The medical evidence in the transcript includes a report completed by Dr. Nancy Slattery, the plaintiff's treating family physician, on October 23, 2007. (Tr. 187). Dr. Slattery reported seeing the patient since September, 1999 and gave her diagnoses as fibromyalgia syndrome, low back pain, and anxiety. Objective findings were bilateral trigger points in the upper and lower extremities and paralumbar tenderness with reduced range of motion. She opined that Mrs. Nesbitt could sit a couple of hours before becoming stiff, could stand for five minutes and walk for two or three blocks before pain would radiate down her legs from her lower back, and lift five pounds or carry a gallon of milk. Handling would cause some hand pain but was "manageable." She added that stress made the patient physically worse. She was able to make decisions but had difficulty adjusting to change. Despite her medications, she still had "a lot of muscle soreness and stiffness." (Id.).

Dr. Slattery also submitted extensive office notes covering all of the relevant period reflecting treatment for fibromyalgia, hip and lower back pain, fatigue, anxiety, hand tingling and numbness, and left arm and neck pain. (Tr. 239-298). Objective findings included tenderness to palpation and a positive Tinel's sign, along with weakness in the grip of her left hand. (E.g., Tr. 263, 274). Objective studies included an x-ray of the cervical spine showing mild osteoarthritis (Tr. 309), an MRI of the cervical spine showing only "subtle" disc bulges which did not affect the spinal cord (Tr. 311), an MRI of the lumbosacral spine showing a "subtle central

disc protrusion" at one level, negative tests for anti-nuclear antibodies, rheumatoid factor, and sedimentation rate (Tr. 314-315), and an x-ray of the left hand showing a minimal spur (Tr. 316).

Dr. Slattery completed a new residual functional capacity assessment on September 28, 2009.  She continued to state that the plaintiff had diagnoses of fibromyalgia, anxiety, and osteoarthritis, and specifically noted that she met the American College of Rheumatology criteria for fibromyalgia.  (Tr. 320).  Her symptoms included multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, irritable bowel syndrome, frequent severe headaches, numbness and tingling, breathlessness, anxiety, and depression.  (Id.).  She indicated that her patient was not a malingerer, and her impairments were reasonably consistent with her symptoms.  (Tr. 321).  She could occasionally lift less than 10 pounds, could sit a total of four hours in an eight-hour day (no more than 20 minutes without interruption), could stand and walk about two hours in an eight-hour day (no more than 15 minutes without interruption), would need the option of sitting and standing at will, would probably require three unscheduled breaks in an eight-hour day at which she would have to lie down, could "rarely" twist or climb stairs, could never stoop, crouch, or climb ladders, could occasionally look up or down, turn her head left or right, or hold her head in a static position, and would have significant limitations with repetitive reaching, handling,

and fingering. (Tr. 322-3). She felt that pain would interfere with her patient's attention and concentration frequently and that she would be incapable of even low stress jobs. (Tr. 321). Clearly, then, the treating physician was restricting the plaintiff to less than full-time work.

Dr. Martin Fritzhand conducted a consultative examination of the plaintiff on November 26, 2007. (Tr. 188). He noted the plaintiff's complaints of "a lot of pain and discomfort all over" her body, as well as depression. It does not appear that he had any records available for review. His examination showed that the plaintiff was obese, and had a depressive affect, but she had a good ability to relate, was comfortable in the sitting and supine positions, and her range of motion studies were good. (Tr. 188-9). Her muscle and grasp strength were well preserved and she had a normal manipulative ability. (Tr. 189). Her neurological examination was normal, although straight leg raising was somewhat diminished. Dr. Fritzhand's impression was that the plaintiff had a history of "fibromyalgia" (quotation marks in original), exogenous obesity, and sinus tachycardia. (Id.). Based on his examination findings, he felt that Mrs. Nesbitt appeared to be able to perform activities commensurate with her age and mental status. (Tr. 190).

A state agency reviewing physician, Dr. Jorge Baez-Garcia, signed a medical assessment form, apparently prepared for him by a non-medical state agency employee, indicating that the plaintiff could perform medium level work with

occasional climbing of ladders, ropes, and scaffolds and a need to avoid concentrated exposure to vibration and hazards. (Tr. 227-35). It does not appear that any state agency source reviewed the bulk of Dr. Slattery's office notes or her most recent functional capacity assessment.

The ALJ stated that he gave the opinion of Dr. Slattery "little weight" because it was inconsistent with Mrs. Nesbitt's activities of daily living, the objective diagnostic testing, and the "well-substantiated opinion of Dr. Fritzhand." (Tr. 27). He asserted that the degree of pain the plaintiff was alleging was significantly greater than could be reasonably anticipated from the minimal objective physical findings, citing the negative findings of Dr. Fritzhand's examination and the relatively minimal findings on the x-rays and MRIs as well as the blood tests for arthritis. (Id.).

Sixth Circuit precedent regarding fibromyalgia, which the ALJ accepted as being a "severe" impairment, notes that "fibromyalgia patients present no objectively alarming signs and such patients have normal muscle strength and neurological reactions and have a full range of motion." Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988). "The process of diagnosing fibromyalgia includes (1) the testing of a series of a focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." Rogers v. Commissioner of Social Security, 486 F.3d 234, 244 (6th Cir. 2007) (citations omitted). As the court noted in Rogers, the ALJ in Preston had

reversed an ALJ's findings that a claimant did not suffer from fibromyalgia based on "fairly normal clinical and test results," noting that "CT scans, x-ray, and minor abnormalities noted by these doctors and cited by the Secretary as substantial evidence of no disability . . . are not highly relevant in diagnosing [fibromyalgia] or its severity." Id. The Rogers court also concluded that the ALJ's decision "impliedly dismissing or minimalizing Rogers' fibromyalgia and instead accepting the non-treating doctors' opinions as to her limitations from 'arthralgias' was not based on substantial evidence." Id. As in the present case, Rogers' treating physicians had observed tender points, ongoing complaints of intense pain and stiffness, and fatigue. Id. The office notes also showed a process of diagnosis elimination, as the treating physician sought to determine whether her symptoms resulted from fibromyalgia or rheumatoid arthritis, factors that were not acknowledged or discussed by the ALJ. Id.

In contrast to Mrs. Nesbitt's treatment history and the ruling out of other conditions by the treating physician, as well as the prescription of strong narcotics for pain, the ALJ can only cite (1) the opinion of a one-time examining source who evidently did not even test the plaintiff for tender points despite being aware of a diagnosis of fibromyalgia and (2) his interpretation of the plaintiff's activities of daily living. For the reasons described above, Dr. Fritzhand's report is of very minimal relevance in assessing limitations due to fibromyalgia.

Regarding the plaintiff's daily activities, the ALJ described them as "extensive" and "certainly" consistent with his residual functional capacity finding. (Tr. 27). He noted that her activities included grocery shopping, attending church and social activities, driving, taking care of her children, watching television, reading, and performing routine household chores. (Id.). As the Sixth Circuit noted in Rogers, however, a claimant's ability to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news were not comparable to typical work activities. Rogers, 486 F.3d at 248. The court also noted that the ALJ had failed to examine the physical effects resulting from the activities. Id. at 249. The same is true here. In the present case, it would appear that the plaintiff's testimony that performing household chores for brief periods of approximately one hour would cause her to become exhausted and have to lie down would be completely inconsistent with the ability to perform full-time light level work as found by the ALJ.

In addition, the plaintiff is correct in noting that even where the opinion of a treating physician is not giving controlling weight, the regulations require that the ALJ apply the factors at 20 C.F.R. § 416.927(d)(2) in determining the weight to give the opinion, and that the ALJ must always give "good reasons" for the weight given to the treating source opinion. See Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004). Although the ALJ announced that he would give Dr.

Slattery "little weight," he did not go into any detail in evaluating the regulatory factors in § 416.927, making it difficult for a reviewing court to discern the basis of his residual functional capacity finding. Dr. Fritzhand found no restrictions, Dr. Baez-Garcia found that the plaintiff was limited to medium level work, and Dr. Slattery found that she was limited to less than full-time work, while the ALJ came out somewhere in between. He may have simply been giving the plaintiff the benefit of the doubt, but this is not apparent.

Therefore, the decision will be remanded for further consideration of the SSI claim.

This the 10th day of November, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**